Docket No. 93412–Agenda 13–November 2002.

THE PEOPLE OF THE STATE OF ILLINOIS 
ex rel.
 LEONARD A. SHERMAN, Director of Professional Regulation, Appellee, v.

 YVONNE CRYNS, Appellant.

Opinion filed February 21, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

At issue in this case is the narrow question of whether plaintiff, the People of the State of Illinois 
ex rel. 
Leonard Sherman, Director of the Illinois Department of Professional Regulation (Department), established a 
prima facie
 case that defendant, Yvonne Cryns, a lay midwife, violated provisions of the Nursing and Advanced Practice Nursing Act (Act) (225 ILCS 65/20–75(a) (West 2000)) when she participated in the August 19, 2000, birth of Spencer Verzi. Plaintiff filed a petition for a preliminary injunction against defendant, pursuant to section 20–75(a) of the Act (225 ILCS 65/20–75(a) (West 2000)), arguing that injunctive relief was warranted because defendant’s actions during the Verzi birth constituted the practice of professional nursing and advanced practice nursing without a license. During a hearing on plaintiff’s petition, the circuit court of McHenry County granted defendant’s motion for directed finding at the close of plaintiff’s case in chief. The circuit court found that plaintiff had presented no evidence showing that any acts engaged in by defendant at the Verzi home constituted acts of nursing or advanced practice nursing. The appellate court reversed, holding that plaintiff had presented 
prima facie
 evidence that during the birth of Spencer Verzi, defendant had practiced professional nursing and advanced practice nursing without a license in violation of the Act. The appellate court accordingly remanded this cause to the circuit court for further proceedings. 327 Ill. App. 3d 753. For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

On January 18, 2000, Leonard Sherman, the Director of Professional Regulation (Director), issued a rule to show cause against defendant, who is a lay midwife. The rule to show cause alleged that, in practicing midwifery, defendant engaged in conduct that constituted the practice of professional nursing and advanced practice nursing, as defined within sections 5–10(l) and 15–5 of the Act (225 ILCS 65/5–10(l), 15–5 (West 2000)). The rule to show cause provided defendant with seven days in which to show why an order to cease and desist the unlicenced practice of nursing and midwifery should not be entered against her. Defendant responded by filing a special and limited appearance objecting to the Department’s jurisdiction over her as a nonnurse midwife. Defendant also filed an affidavit in which she averred that she was not licensed as a nurse or engaged in a licensed profession.

On April 7, 2000, the Director issued a cease and desist order against defendant, commanding her to immediately cease and desist from engaging in conduct constituting the practice of nursing and midwifery, until she complied with the licensing requirements for a professional nurse and an advanced practice nurse contained within the Act. Specifically, the cease and desist order stated that defendant was not registered as a professional nurse pursuant to section 10–5 of the Act (225 ILCS 65/10–5(a), (b), (c) (West 2000)); that defendant did not hold a current, national certificate as a nurse midwife from the appropriate national certifying body (225 ILCS 65/15–10(a)(3) (West 2000)); that defendant had not complied with a post-basic advanced formal education program in the area of midwifery (225 ILCS 65/15–10(a)(5) (West 2000)); that defendant does not have a collaborative agreement with a physician as required of a certified nurse midwife under the Act (225 ILCS 65/15–15 (West 2000)); and that defendant has been practicing midwifery without the appropriate license and certificate.
(footnote: 1)
 On October 3, 2000, plaintiff filed a verified complaint for injunctive relief against defendant. Pursuant to section 20–75(a) of the Act (225 ILCS 65/20–75(a) (West 2000)), the Director may, in the name of the People of the State of Illinois and through the Attorney General of Illinois, petition the circuit court for an order enjoining any violation of the Act or for an order enforcing compliance with the Act. The verified complaint alleged that the Department is statutorily authorized to enforce minimum standards of professional education and licensure for the practice of nursing and advanced practice nursing. According to the complaint, defendant, as a midwife, is improperly engaged in rendering prenatal, childbirth and postpartum care without a nursing license. The complaint further alleged that defendant violated provisions of the Act when she assisted with the birth of Spencer Verzi, at the Verzi home on August 19, 2000. According to the complaint, “[w]hile defendant was physically assisting with the delivery, the Verzi baby was born in a breech position. Defendant waited approximately more than 15 minutes before calling paramedics. Defendant made efforts to resuscitate the Verzi baby which were unsuccessful.” The complaint further alleged that “[v]ideotape shot at the scene shows the entire incident and shows defendant physically assisting in the birth of baby Verzi, which amounted to the continued practice of nursing or Midwifery” without the requisite license. The complaint concluded by asserting that “[d]efendant’s actions of continuing to practice nursing and Midwifery without the proper qualifications, licensing and supervision is creating an imminent danger of harm to the public.”

On October 5, 2000, the circuit court entered a temporary restraining order against defendant’s practice of nursing and midwifery, pending a hearing on plaintiff’s complaint for preliminary injunction. The circuit court conducted a hearing on the preliminary injunction complaint on October 13, 2000. Plaintiff called Louis Verzi, the father of Spencer Verzi, to testify with respect to Spencer’s birth. Verzi stated that he and his wife, Heather, hold “alternative ideas on health that are not shared with most doctors in hospitals.” Accordingly, the Verzis decided that it was best that they have their child at home without the presence of a doctor or nurse. The Verzis desired to take a natural approach to childbirth and decided on a “water birth,” wherein the mother gives birth while being partially submerged in a birthing pool. Verzi stated that the water-birth option was not available at any nearby hospitals, and that he and his wife hired defendant to work with them to accomplish a home water birth. According to Verzi, defendant never claimed to be a nurse, and he and his wife did not view defendant as a nurse. Rather, Verzi testified, the purpose of defendant being in their home during Spencer’s birth was “to give us advice and to help us through the birth of our child, to help us in things that we didn’t know.” According to Verzi, defendant discussed with him and his wife the fact that if complications were to arise during the birth, medical assistance would not be immediately available.

According to Verzi, defendant had Heather fill out a “client form,” in which Heather indicated that the Verzis believed in “natural health” and did not believe in prescriptions or over-the-counter medications. The responses on this form also indicated that the Verzis viewed Heather’s mother as their “doctor,” meaning that they relied on her for advice with respect to their health. According to Verzi, Heather had several prenatal visits with defendant, during which defendant monitored the baby’s heartbeat using both a specially designed stethoscope known as a “fetoscope,” and also a device known as a “Doppler,” in which reflected sound waves are used to estimate the speed and direction of blood flow. Verzi stated that a few months before Spencer’s birth, defendant had disclosed that a cease and desist order was issued against her by the Department. This information, however, did not deter the Verzis from continuing their relationship with defendant, as defendant was someone that they “had come to trust” and they “felt strongly” that defendant was the person to deliver their child.

Verzi testified that at mid-morning on August 19, 2000, his wife’s water broke, and that defendant arrived at their home between 1 and 1:30 p.m. Several family members and friends had gathered at the Verzi house to witness the birth. At approximately 3:45 p.m., Heather began to deliver the baby when his left foot emerged from the birth canal. According to Verzi, during the delivery defendant used the fetoscope “four or five times” to listen to the baby’s heartbeat, and also used the Doppler device. Verzi recalled that at one point during the birthing process, Heather asked defendant to physically pull the baby out, and that defendant refused Heather’s request. Verzi stated that defendant instead told Heather to push the baby out, and that Heather’s body would know the right thing to do. However, Verzi testified that Heather continued to have difficulty in delivering the baby and that “when matters became urgent” defendant did attempt to physically extract the baby. By 4:30 p.m., the baby was born. However, upon his birth Spencer was not breathing. Verzi stated that although defendant administered CPR to Spencer for approximately 10 minutes using an “Ambu bag,” which is a device used to push air into a baby’s lungs after birth, the baby was not responsive. Verzi testified that at that point defendant requested that 911 be called. According to Verzi, defendant was still at their home, attempting to resuscitate Spencer, when the ambulance and paramedics arrived.

Verzi further testified that the delivery of Spencer was videotaped by two cameras which were present in the room: one video camera was mounted on a tripod and was stationary, while the other video camera was hand-held and operated by a friend of the family. Verzi stated that, during the evening prior to his testimony, a police officer delivered a videotape to his home. Upon viewing the videotape, Verzi realized that the one tape contained the video recordings from both cameras present during the birth. He also testified that the tape ran for approximately 1 hour, 20 minutes. Verzi testified that although he did not know who combined the two videotapes together, the videotape he viewed on the evening prior to his testimony truly and accurately reflected the events which transpired at his home on August 19, 2000. The videotape was not played in court.

Plaintiff thereafter moved to enter the videotape into evidence. Defendant objected to the admission of the videotape on the ground that plaintiff had failed to lay a proper foundation for the tape recording. Defendant argued that plaintiff was required to call the individuals who made the video recordings to testify. The circuit court, over defendant’s objection, held that Verzi’s testimony that the videotape truly and accurately reflected the events of Spencer’s birth provided a sufficient foundation for the admission of the videotape. The court then admitted the tape into evidence. However, the circuit court judge did not view the videotape at any time during the proceedings.

Plaintiff next called defendant to testify. Defendant invoked her fifth amendment (U.S. Const., amend. V) privilege against self-incrimination because of criminal charges pending against her as a result of Spencer Verzi’s death, and refused to answer any questions.

At this juncture, plaintiff rested its case.

After plaintiff rested its case, defendant moved for a directed finding, arguing that plaintiff had presented no evidence showing that any acts performed by defendant during the birth of Spencer Verzi constituted acts of nursing or of advanced practice nursing. The circuit court agreed, and granted defendant’s motion. The circuit court stated that plaintiff produced no evidence that what occurred during the Verzi birth violated any provisions of the Act. The circuit court also dissolved the temporary restraining order previously entered against defendant. However, the circuit court stayed its order subject to an interlocutory appeal of its ruling.

The appellate court vacated the circuit court’s order denying plaintiff’s motion for preliminary injunction and remanded the cause to the circuit court. 
People ex rel. Sherman v. Cryns
, 321 Ill. App. 3d 990 (2001) (
Cryns I
). The appellate court determined that the circuit court abused its discretion in ruling on plaintiff’s request for a preliminary injunction without viewing the videotape that it had admitted into evidence.

On August 7, 2001, the circuit court entered an order reaffirming its decision to grant a directed finding in favor of defendant. The circuit court held that after viewing the videotape and reviewing the transcript of the hearing, it remained convinced that “there is no evidence in the record *** from which this court could conclude that the activities of [defendant] constituted the practice of nursing or Midwifery.”

 The appellate court reversed. 327 Ill. App. 3d 753 (
Cryns II
). The appellate court first rejected defendant’s contention that the circuit court abused its discretion by admitting into evidence the videotape recording of the events that transpired at the Verzi home on August 19, 2000. The appellate court held that a videotape is properly admitted if it is identified as an accurate and complete portrayal of certain facts relevant to a particular issue and is verified by a witness with personal knowledge who attests that it is a correct representation of these facts. In the matter at bar, the appellate court determined that Verzi was a competent witness who had personal knowledge to identify the videotape as being a correct representation of the birth of his child. The appellate court also rejected defendant’s contention that although Verzi testified that the videotape he viewed the night before the hearing accurately depicted the events portrayed in the tape, there was no verification at the hearing that the videotape admitted into evidence was the same one that Verzi had viewed. The appellate court observed that defendant failed to cite to any authority that a videotape must be viewed at trial in order to establish a foundation for its admission into evidence. In addition, the appellate court held that defendant’s suggestion that the videotape entered into evidence might not have been the same as that viewed by Verzi the night before was completely unsubstantiated.

The appellate court then turned to the question of whether the circuit court erred in granting defendant’s motion for a directed finding at the conclusion of plaintiff’s case in chief. The appellate court determined that in the matter at bar plaintiff, through the testimony of Louis Verzi and the events depicted in the videotape, established a 
prima facie
 case that during Spencer’s birth defendant was practicing nursing or midwifery without a license.

 The appellate court observed that under section 5–10(l) of the Act, “[r]egistered professional nursing practice” includes “the assessment of healthcare needs, nursing diagnosis, planning, implementation, and nursing evaluation,” the “promotion, maintenance, and restoration of health,” and “counseling, patient education, health education, and patient advocacy.” 225 ILCS 65/5–10(l) (West 2000). The appellate court noted that Verzi had testified that he and his wife, Heather, had hired and paid defendant to advise and assist them in the delivery of their baby. In addition, the court observed that prior to Spencer’s birth, defendant used various medical instruments to listen to his heartbeat and ascertain his health status. Further, defendant actively assisted in delivering the baby and in resuscitation efforts. In light of these facts, the appellate court concluded that defendant was practicing nursing or midwifery, as she was assessing the healthcare needs of the mother and baby, making nursing evaluations, attempting to promote, maintain and restore the baby’s health, and attempting corrective measures to improve the baby’s health status. The appellate court also concluded that the Act provides adequate notice of what duties a person without a nursing license is unable to perform. Accordingly, the appellate court held that the trial court erred in finding that plaintiff presented no evidence from which the court could conclude that defendant’s activities constituted the practice of nursing or midwifery in violation of the Act.

Defendant petitioned this court for leave to appeal pursuant to our Rule 315(a) (177 Ill. 2d R. 315(a)). We granted defendant’s petition.

ANALYSIS

The narrow issue presented in this appeal is whether plaintiff adduced evidence during the October 13, 2000, hearing sufficient to establish a 
prima facie
 case that defendant’s conduct on August 19, 2000, during the birth of Spencer Verzi constituted the practice of nursing and advanced practice nursing without a license in violation of the Act. For the reasons that follow, we hold that the circuit court erred in directing a finding for defendant.

At the conclusion of plaintiff’s case in chief, defendant, pursuant to section 2–1110 of the Code of Civil Procedure (735 ILCS 5/2–1110 (West 2000)), moved for a finding in her favor. Section 2–1110 provides that in all cases tried without a jury, a defendant may, at the close of the plaintiff’s case, move for a finding or judgment in his or her favor. In ruling on this motion, a court must engage in a two-prong analysis.
 Kokinis v. Kotrich
, 81 Ill. 2d 151, 155 (1980). First, the court must determine, as a matter of law, whether the plaintiff has presented a 
prima facie
 case. A plaintiff establishes a 
prima facie
 case by proffering at least “some evidence on every element essential to [the plaintiff’s underlying] cause of action.” 
Kokinis
, 81 Ill. 2d at 154. If the plaintiff has failed to meet this burden, the court should grant the motion and enter judgment in the defendant’s favor. 
Kokinis
, 81 Ill. 2d at 155. Because a determination that a plaintiff has failed to present a 
prima facie
 case is a question of law, the circuit court’s ruling is reviewed 
de novo
 on appeal. See 
Kokinis
, 81 Ill. 2d at 154-55; 
Evans v. Gurnee Inns, Inc.
, 268 Ill. App. 3d 1098, 1102 (1994).

If, however, the circuit court determines that the plaintiff has presented a 
prima facie
 case, the court then moves to the second prong of the inquiry. In its role as the finder of fact, the court must consider the totality of the evidence presented, including any evidence which is favorable to the defendant. Contrary to the 
Pedrick
 standard, which governs a motion for directed verdict during a jury trial (
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494 (1967)), under section 2–1110 the court is not to view the evidence in the light most favorable to the plaintiff. 
Kokinis
, 81 Ill. 2d at 154. Rather, the circuit court must weigh all the evidence, determine the credibility of the witnesses, and draw reasonable inferences therefrom. 735 ILCS 5/2–1110 (West 2000); 
Kokinis
, 81 Ill. 2d at 154-55. This weighing process may result in the negation of some of the evidence presented by the plaintiff. After weighing the quality of all of the evidence, both that presented by the plaintiff and that presented by the defendant, the court should determine, applying the standard of proof required for the underlying cause, whether sufficient evidence remains to establish the plaintiff’s 
prima facie
 case. If the circuit court finds that sufficient evidence has been presented to establish the plaintiff’s 
prima facie
 case, the court should deny the defendant’s motion and proceed with the trial. 
Kokinis
, 81 Ill. 2d at 155. If, however, the court determines that the evidence warrants a finding in favor of the defendant, it should grant the defendant’s motion and enter a judgment dismissing the action. 
Kokinis
, 81 Ill. 2d at 155. A reviewing court will not reverse the circuit court’s ruling on appeal unless it is contrary to the manifest weight of the evidence. 
Kokinis
, 81 Ill. 2d at 154.

As stated, in the matter at bar, the circuit court determined that plaintiff failed to present a 
prima facie
 case that defendant’s conduct during the Verzi birth violated provisions of the Act and, therefore, denied plaintiff’s petition for a preliminary injunction by granting defendant’s motion for a directed verdict. The circuit court arrived at this conclusion by finding that plaintiff failed to adduce 
any
 evidence that defendant was engaged in the practice of nursing without a license in violation of the Act. Because the circuit court determined that plaintiff failed to establish a 
prima facie
 case as a matter of law, we consider the circuit court’s ruling under a 
de novo
 standard of review.

The purpose of a preliminary injunction is to maintain and preserve the status quo, pending a decision on the merits of a cause. 
Callis
, 
Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.
, 195 Ill. 2d 356, 365 (2001). A preliminary injunction is not intended to determine controverted rights or decide the merits of a case.
 People ex rel. Sklodowski v. State
, 162 Ill. 2d 117, 131 (1994). Under section 20–75 of the Act (225 ILCS 65/20–75 (West 2000)), the Director is authorized to petition the circuit court for an injunction against any individual who is practicing nursing without a license. Where, as here, the State or a governmental agency is expressly authorized by statute to seek injunctive relief, the traditional equitable elements necessary to obtain an injunction need not be satisfied. 
Sadat v. American Motors Corp.
, 104 Ill. 2d 105, 111-13 (1984); see 
People v. Van Tran Electric Corp.
, 152 Ill. App. 3d 175, 184 (1987);
 People ex rel. Hartigan v. Stianos
, 131 Ill. App. 3d 575, 580 (1985). The State or the agency seeking the injunction need only show that the statute was violated and that the statute relied upon specifically allows injunctive relief. 
Sadat
, 104 Ill. 2d at 111-13; see 
Midland Enterprises, Inc. v. City of Elmhurst
, 226 Ill. App. 3d 494, 504 (1993). This principle of law is animated by the rationale that because statutes authorizing injunctive relief often do so on behalf of a public official in his or her capacity as the enforcer of a regulatory scheme, “the violation of such a statute implies an injury to the general public [and] [s]uch injury necessitates the statutory authorization for equitable relief and supplants the traditional equitable pleading requirements.” 
Sadat
, 104 Ill. 2d at 113. It is presumed that public harm occurs when a statute is violated. See 
Midland
, 226 Ill. App. 3d at 504; 
Stianos
, 131 Ill. App. 3d at 580 (“The principle underlying the willingness of the courts to issue statutory injunctions to public bodies to restrain violations of a statute is that harm to the public at large can be presumed from the statutory violation alone”). Once it has been established that a statute has been violated, no discretion is vested in the circuit court to refuse to grant the injunctive relief authorized by that statute. See 
Midland
, 226 Ill. App. 3d at 504.

Accordingly, in order to establish a 
prima facie
 case for statutory injunctive relief, and to withstand a motion for a directed finding, plaintiff at bar was required to present at least some evidence in the circuit court that defendant’s conduct during the Verzi birth violated the provisions of the Act. Defendant contends that the circuit court correctly held that plaintiff failed to meet this evidentiary burden. Defendant characterizes herself as a “traditional (non-nurse) midwife” and contends that she is part of a class of individuals that is not specifically identified in the Act. Defendant argues that because there is no explicit prohibition against traditional (nonnurse) midwifery in the Act, her conduct, therefore, is not subject to regulation by the Department. Plaintiff responds that the broad language chosen by the General Assembly to describe the conduct governed by the Act, coupled with the legislature’s stated purpose in passing the Act of protecting the public health, safety and welfare, as well as the legislature’s explicit command that the terms of the Act be liberally construed to effectuate this stated purpose, evince that the General Assembly intended that conduct, such as that engaged in by defendant during the Verzi birth, be regulated under the Act.

The question of whether the conduct of defendant on August 19, 2000, falls within the scope of the Act requires us to interpret the statutory provisions found within that statute. Accordingly, the issue before us is a matter of statutory construction, and our review is 
de novo. Sylvester v. Industrial Comm’n
, 197 Ill. 2d 225, 232 (2001). Our inquiry is guided by well-settled principles. 

In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature. 
In re Detention of Lieberman
, 201 Ill. 2d 300, 307 (2002); 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000). All other rules of statutory construction are subordinate to this cardinal principle.
 Sylvester
, 197 Ill. 2d at 232; 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 387 (1998). We ascertain the intent of the legislature by examining the language of the statute, which is “the most reliable indicator of the legislature’s objectives in enacting a particular law.” 
Michigan Avenue National Bank
, 191 Ill. 2d at 504; see also 
Yang v. City of Chicago
, 195 Ill. 2d 96, 103 (2001). The language of the statute must be afforded its plain, ordinary and popularly understood meaning (
Lieberman
, 201 Ill. 2d at 308; 
Bubb v. Springfield School District 186
, 167 Ill. 2d 372, 381 (1995)), and we are to give the statutory language the fullest, rather than the narrowest, possible meaning to which it is susceptible (
Lake County Board of Review v. Property Tax Appeal Board
, 119 Ill. 2d 419, 423 (1988)). This court will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. 
Petersen v. Wallach
, 198 Ill. 2d 439, 446 (2002); 
Yang
, 195 Ill. 2d at 103.

All provisions of a statutory enactment are viewed as a whole. 
Michigan Avenue National Bank
, 191 Ill. 2d at 504; 
Bubb
, 167 Ill. 2d at 382. Therefore, words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. 
Sylvester
, 197 Ill. 2d at 232; 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous.
 Sylvester
, 197 Ill. 2d at 232. Accordingly, in determining the intent of the General Assembly, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved. 
In re Detention of Lieberman
, 201 Ill. 2d at 308; 
People v. Pullen
, 192 Ill. 2d 36, 42 (2000). “Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.” 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 96 (1990). In construing a statute, we presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. 
In re Lieberman
, 201 Ill. 2d at 309; 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 40 (2001).

It is well settled that the General Assembly has wide regulatory power with respect to the health-care professions, and it is within the broad discretion of the legislature “ ‘to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest.’ ” 
Burger
, 198 Ill. 2d at 41, quoting 
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357, 364 (1985). An example of the legislature’s exercise of these broad regulatory powers is its enactment of the Nursing and Advanced Practice Nursing Act (225 ILCS 65/5–1 
et seq
. (West 2000)). In passing this Act, the General Assembly explicitly stated that because “[t]he practice of professional and practical nursing in the State of Illinois is hereby declared to affect the public health, safety, and welfare,” it is “subject to regulation and control in the public interest.” 225 ILCS 65/5–5 (West 2000). In this Act, the legislature clearly expressed its intent that it is “a matter of public interest and concern that the practice of nursing, as defined in this Act, merit and receive the confidence of the public and that only qualified persons be authorized to so practice in the State of Illinois.” 225 ILCS 65/5–5 (West 2000). Therefore, the legislature mandated that “[f]or the protection of life and the promotion of health *** any person practicing or offering to practice professional *** nursing in Illinois shall submit evidence that he or she is qualified to practice, and shall be licensed as provided under this Act.” 225 ILCS 65/5–15 (West 2000). In order to effectuate the important regulatory and remedial purposes of the Act, the legislature explicitly instructed that the Act is to be “liberally construed to best carry out these subjects and purposes.” 225 ILCS 65/5–5 (West 2000).

 The Act authorizes the licensure of nurses in three categories: licensed practical nurses, registered professional nurses, and advanced practice nurses. Only the latter two categories are at issue in this appeal. A “registered professional nurse” is defined in section 5–10(k) of the Act as “a person who is licensed as a professional nurse under this Act and practices nursing as defined in paragraph (l) of this Section.” 225 ILCS 65/5–10(k) (West 2000). Paragraph (l) of section 5–10 of the Act (225 ILCS 65/5–10(l) (West 2000)) sets forth the conduct that constitutes a “[r]egistered professional nursing practice” for purposes of the Act:

“ ‘Registered professional nursing practice’ includes all nursing specialties and means the performance of any nursing act based upon professional knowledge, judgment, and skills acquired by means of completion of an approved registered professional nursing education program. A registered professional nurse provides nursing care emphasizing the importance of the whole and the interdependence of its parts through the nursing process to individuals, groups, families, or communities, that includes but is not limited to: (1) the assessment of healthcare needs, nursing diagnosis, planning, implementation, and nursing evaluation; (2) the promotion, maintenance, and restoration of health; (3) counseling, patient education, health education, and patient advocacy; (4) the administration of medications and treatments as prescribed by a physician licensed to practice medicine in all of its branches, a licensed dentist, a licensed podiatrist, or a licensed optometrist or as prescribed by a physician assistant in accordance with written guidelines required under the Physician Assistant Practice Act of 1987 or by an advanced practice nurse in accordance with a written collaborative agreement required under the Nursing and Advanced Practice Nursing Act; (5) the coordination and management of the nursing plan of care; (6) the delegation to and supervision of individuals who assist the registered professional nurse implementing the plan of care; and (7) teaching and supervision of nursing students.”

A nurse who specializes in the delivery of babies is referred to as a “certified nurse midwife” in the Act and is characterized as an “[a]dvanced practice nurse.” 225 ILCS 65/15–5 (West 2000). An advanced practice nurse (APN) is a registered professional nurse, as defined in section 5–10(k) of the Act (225 ILCS 65/5–10(k) (West 2000)), who meets the additional licensing requirements set forth in section 15–10 of the Act (225 ILCS 65/15–10 (West 2000)). Advanced practice nursing licenses are granted for four categories of APNs, only one of which is relevant here: certified nurse midwife. Pursuant to section 15–10 of the Act, a registered nurse shall be qualified for licensure as a certified nurse midwife if that person has applied in writing to the Department; holds a current license to practice as a registered nurse in this state; has successfully completed requirements to practice as, and holds a current, national certification as, a nurse midwife; has paid the required fees; and has successfully completed a post-basic advanced practice formal education program in nurse midwifery. 225 ILCS 65/15–10 (West 2000). In addition, pursuant to section 15–15 of the Act (225 ILCS 65/15–15 (West 2000)), a certified nurse midwife must enter into a written collaborative agreement with a physician who provides medical direction as authorized in the collaborative agreement. A certified nurse midwife must meet all of the above requirements in order to be qualified to treat patients “by using medical, therapeutic, and corrective measures to treat illness and improve health status.” 225 ILCS 65/15–5 (West 2000).

As an initial matter, we address an evidentiary argument raised by defendant with respect to the videotape of Spencer’s birth admitted into evidence by the circuit court. In her brief to this court, defendant reiterates her position that the circuit court erred in allowing the videotape into evidence. Plaintiff is correct, and defendant acknowledges, that defendant failed to raise this argument in her petition for leave to appeal to this court (see 177 Ill. 2d R. 315(b)(3) (the petition shall state “the points relied upon for reversal of the judgment of the Appellate Court”)), and that a party’s failure to raise an argument in the petition for leave to appeal may be deemed a waiver of that argument. 
Federal Deposit Insurance Corp. v. O’Malley
, 163 Ill. 2d 130, 154 (1994). However, the rule of waiver is a limitation on the parties and not on the court. 
Michigan Avenue National Bank
, 191 Ill. 2d at 518. We choose to address defendant’s contention.

A videotape may be admitted as demonstrative evidence when it is properly authenticated and is relevant to a particular issue in the case. 
Cisarik v. Palos Community Hospital
, 144 Ill. 2d 339, 341-42 (1991). First, a foundation must be laid, by someone having personal knowledge of the filmed object, that the film is an accurate portrayal of what it purports to show. 
Cisarik
, 144 Ill. 2d at 342. “Verification may be furnished by the testimony of any competent witness who has sufficient knowledge to testify that the videotape fully represents what it purports to portray.” 
Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union, Division of Boilermakers, AFL-CIO, Local No. 438
, 145 Ill. App. 3d 1023, 1027 (1986). Second, a videotape will be considered relevant only as long as its probative value is not substantially outweighed by the danger of unfair prejudice. 
Cisarik
, 144 Ill. 2d at 342. The admission of a videotape into evidence is within the sound discretion of the circuit court and will not be disturbed absent an abuse of discretion. 
Missouri Portland Cement Co.
, 145 Ill. App. 3d at 1027.

In her submission to this court, defendant does not quarrel with the above-discussed principles of law. She does assert, however, that the circuit court erred in admitting the videotape into evidence because although Louis Verzi stated that the videotape he viewed in his home the evening before his court testimony was an accurate portrayal of the events that occurred during his son’s birth, this testimony was inadequate support for the admission of the videotape that was actually admitted into evidence. We agree. Whether the videotape viewed by Verzi at his home on the evening prior to the October 13, 2000, hearing was the same tape produced by plaintiff in court and admitted into evidence is unknown. During the hearing, the videotape that was admitted into evidence was not played for the parties, the witnesses or the court. Plaintiff proffered no testimony during the hearing that, based upon Verzi’s personal knowledge, the videotape that was 
actually admitted into evidence
 was a true and accurate depiction of what it purported to show. The testimony proffered by Verzi with respect to the videotape he viewed at his home during the previous evening was insufficient to establish a proper evidentiary foundation for the videotape that was actually admitted. Accordingly, we hold that because the foundation for admission of the videotape was insufficient, the circuit court abused its discretion in admitting the videotape into evidence.

Upon reviewing the record in this matter, absent the videotape, we conclude that the conduct of defendant on August 19, 2000, during the birth of Spencer Verzi constituted 
prima facie
 evidence of “professional nursing” within the meaning of the Act. Therefore, we hold that the circuit court erred in finding that plaintiff failed to present any evidence to establish a 
prima facie
 case that during the Verzi birth defendant engaged in conduct which violated the Act. It is clear that the General Assembly passed the Act as a comprehensive regulation of the practice of nursing, and that the Act reflects serious policy concerns about the detrimental effect to the public health and safety when unlicenced individuals engage in the conduct described in, and regulated by, the Act. To this end, the legislature explicitly provided in section 5–15 (225 ILCS 65/5–15 (West 2000)) that only those persons qualified and licenced under the Act are authorized to engage in the conduct defined as “professional nursing” in section 5–10(l) of the Act. 225 ILCS 65/5–10(l) (West 2000). The legislature chose broad language to define those individuals covered by the Act, stating that “any person” who practices or offers to practice professional nursing in this state must abide by the rules and regulations set forth in this statute. 225 ILCS 65/5–15 (West 2000).

The General Assembly, however, also deemed it appropriate to enumerate certain limited and explicit exceptions to the coverage of the Act. For example, the Act does not apply to individuals who “furnish[ ] *** nursing assistance in an emergency” (225 ILCS 65/5–15(c) (West 2000)) or to instances where “[t]he incidental care of the sick [is performed] by members of the family, domestic servants or housekeepers” (225 ILCS 65/5–15(e) (West 2000)). The Act also excludes from coverage those individuals who care for the sick “where treatment is by prayer or spiritual means” (225 ILCS 65/5–15(e) (West 2000)) and exempts from its coverage persons “employed as nursing aides, attendants, orderlies, and other auxiliary workers in private homes, long term care facilities, nurseries, hospitals or other institutions” (225 ILCS 65/5–15(f) (West 2000)). Under the principle of 
expressio unius est exclusio alterius
, the enumeration of exceptions in a statute is construed as an exclusion of all other exceptions. See 2A N. Singer, Sutherland on Statutory Construction §47.23 (6th ed. 2000). We have previously observed that this rule of statutory construction “is based on logic and common sense,” as “[i]t expresses the learning of common experience that when people say one thing they do not mean something else.” 
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141, 152 (1997). Applying this rule of construction to the matter before us, we conclude that the General Assembly intended to exempt from the coverage of the Act only those instances specifically enumerated. We discern no contrary legislative intent which would overcome this rule of construction and support defendant’s contention that traditional midwives, as a class, were intended by the General Assembly to be excluded from coverage under the Act. See 
Bridgestone/Firestone, Inc.
, 179 Ill. 2d at 153-54 (“the principle that the expression of one thing in a statute excludes any other thing is only a rule of statutory construction, not a rule of law *** [and] may be overcome by a strong indication of legislative intent”). Indeed, the strong public policy considerations of protecting the public health and safety which underpin the Act lend additional support for our conclusion.

 In addition to broadly defining the class of individuals subject to regulation under the Act, the General Assembly also employed broad language to define the conduct to which the Act applies. Section 5–10(l) of the Act defines “professional nursing practice” to include “the assessment of healthcare needs, nursing diagnosis, planning, implementation, and nursing evaluation,” the “promotion, maintenance, and restoration of health,” and “counseling, patient education, health education, and patient advocacy.” 225 ILCS 65/5–10(l) (West 2000). The record establishes that plaintiff proffered sufficient evidence to establish a 
prima facie
 case that defendant’s conduct with respect to the Verzi birth constituted the practice of “professional nursing” and was therefore prohibited for an individual without a nursing license.

Louis Verzi testified that he and his wife hired defendant “to give us advice and to help us through the birth of our child, to help us in things that we didn’t know.” Verzi stated that Heather had several prenatal visits with defendant, during which defendant monitored the status of the baby’s health by using a fetoscope and Doppler to listen for the baby’s heartbeat. On the date of Spencer’s birth, August 19, 2000, defendant arrived at the Verzi home shortly after Heather began her labor. After Heather delivered the baby’s left foot, she experienced difficulty in delivering any more of the baby. Verzi testified that during the labor process, defendant, on several occasions, used the fetoscope and Doppler to check the baby’s heartbeat while the baby was still in Heather’s uterus. Once Spencer was born, defendant attempted to resuscitate him with the aid of an Ambu bag to push air into his lungs. Defendant attempted resuscitation in this manner for approximately 10 minutes, stopping every minute or so to listen to Spencer’s heartbeat with the fetoscope.

We conclude that the above described evidence is sufficient to establish a 
prima
 facie case that defendant engaged in the practice of nursing without a license. We agree with the appellate court below that throughout her interaction with the Verzis, defendant was assessing the “healthcare needs” of both Heather and the baby, and making “nursing evaluation[s]” in violation of section 5–10(l) of the Act (225 ILCS 65/5–10(l) (West 2000)). We also agree with the appellate court that defendant’s conduct was aimed at “promot[ing], maint[aining], and restor[ing]” the health of the mother and child, also in violation of section 5–10(l) of the Act (225 ILCS 65/5–10(l) (West 2000)). Further, defendant provided “counseling, patient education, [and] health education,” also in violation of the Act. 225 ILCS 65/5–10(l) (West 2000). Finally, we agree with the appellate court that defendant’s actions in attempting to resuscitate the baby constituted “corrective measures” to improve his health status and constituted additional violations of the Act (225 ILCS 65/15–5 (West 2000)).

 Defendant further contends that, if we determine that her conduct during the Verzi birth constituted “nursing practice” within the meaning of the Act, she is nevertheless exempted from the Act’s coverage because she engaged in the practice of nursing only because she was faced with an emergency situation when she could not hear the baby’s heartbeat. We disagree. Louis Verzi testified that prior to Spencer’s birth, defendant provided the Verzis with “advice” and “help” with respect to the birthing process, and that during prenatal visits with Heather, defendant checked the baby’s heartbeat with the aid of the fetoscope and Doppler. Further, on the day Spencer was born, defendant used both the fetoscope and Doppler on several occasions to listen to Spencer’s heartbeat 
in utero.
 Thus, the record reveals that defendant performed several acts which constituted the practice of nursing, within the meaning of the Act, prior to any indication that the baby was in distress. Accordingly, we reject defendant’s contention that she is not subject to the provisions of the Act.

In sum, we conclude that the circuit court erred in holding that plaintiff failed to present a 
prima facie
 case that defendant engaged in conduct violative of the Act. As stated, in construing the meaning of statutes, the primary objective of this court is to ascertain and give effect to the legislature’s intent. 
Michigan Avenue National Bank
, 191 Ill. 2d at 503-04. In exercising its broad powers in regulating matters of public health and safety, the General Assembly employed broad language in the provisions of the Act to effectuate the Act’s stated purpose of protecting life and promoting health. See 225 ILCS 65/5–15 (West 2000). In addition, the legislature explicitly instructed that the provisions of the Act are to be liberally construed to effectuate these public policy goals. 225 ILCS 65/5–5 (West 2000). In interpreting statutory provisions, we are to afford the statute’s plain language its fullest meaning to effectuate the legislative intent (
Lake County Board of Review
, 119 Ill. 2d at 423), and we may not read into a statute exceptions, limitations or conditions that conflict with the intent of the legislature (
Petersen
, 198 Ill. 2d at 446).

Our holding today effectuates the intent of the General Assembly, as evidenced in the Act, to promote the public health, safety and welfare by ensuring that those individuals who engage in the conduct described in the Act are properly trained and licensed. Indeed, a contrary result would thwart the intent of the legislature in regulating conduct it has defined as the practice of nursing. Were we to accept defendant’s argument that those persons who label themselves as traditional nonnurse midwives are not regulated by the Act, an absurd result would occur. An individual would be able to bypass the licensing and training requirements of the Act simply by referring to herself as a “traditional nonnurse midwife,” even if that person provided exactly the same type of nursing care as a certified nurse midwife. This would mean that a person’s status under the Act would depend merely upon how she labeled herself, and the conduct in which that person engaged would become irrelevant. In construing statutes, we presume that the General Assembly, in enacting the legislation, did not intend absurdity or injustice. 
Burger
, 198 Ill. 2d at 40. The stringent training and licensing requirements for a certified nurse midwife demonstrate the legislature’s intent to regulate this specific area of nursing practice. Defendant’s interpretation of the Act would render a certified nurse midwife’s license meaningless. Certainly, the General Assembly could not have intended such an absurd result.

Defendant also raises the contention on appeal that the provisions of Act that prohibit the practice of nursing without a license are unconstitutionally vague as applied to her, thereby violating her right to due process. According to defendant, the Act contains no language to indicate that it is intended to govern the practice of traditional midwifery, as the Act fails to include a definition of midwifery and does not expressly prohibit the practice of midwifery by persons other than nurses. Thus, defendant concludes, the Act does not provide adequate notice of the conduct prohibited.

The constitutionality of a statute is a question of law subject to 
de novo 
review. 
Burger
, 198 Ill. 2d at 31; 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57 (2001). Statutes are presumed to be constitutional, and the party challenging the validity of the statute has the burden to clearly establish the constitutional invalidity. 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 351 (1999); 
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998). A court must construe a statute so as to affirm its constitutionality, if the statute is reasonably capable of such a construction. 
Burger,
 198 Ill. 2d at 32. Accordingly, “ ‘if [a] statute’s construction is doubtful, a court will resolve the doubt in favor of the statute’s validity.’ ” 
Miller
, 196 Ill. 2d at 58, quoting 
People v. Shephard
, 152 Ill. 2d 489, 499 (1992). We conclude that defendant has failed to satisfy her burden of clearly establishing that the provisions of the Act are unconstitutionally vague as applied to her.

 A statute violates the due process clauses of the United States Constitution or the Illinois Constitution on the basis of vagueness “ ‘only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.’ ” 
Stern v. Norwest Mortgage, Inc.
, 179 Ill. 2d 160, 168 (1997), quoting 
People v. Burpo
, 164 Ill. 2d 261, 265-66 (1995). In order to succeed on a vagueness challenge to a statute that does not involve a first amendment right, a party must establish that the statute is vague as applied to the conduct for which the party is being prosecuted. 
People v. Jihan
, 127 Ill. 2d 379, 385 (1989); see 
People v. Stults
, 291 Ill. App. 3d 71, 83 (1997). A statute is not vague, and therefore does not violate due process, if the duty imposed by the statute is set forth in terms definite enough to serve as a guide to those who must comply with it. 
Chastek v. Anderson
, 83 Ill. 2d 502, 507 (1981). “[T]he party must show that the statute did not provide clear notice that the party’s conduct was prohibited.” 
Jihan
, 127 Ill. 2d at 385; see also 
Stults
, 291 Ill. App. 3d at 83. In other words, the provisions of a statute must be definite so that a “ ‘person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly.’ ” 
Jihan
, 127 Ill. 2d at 385, quoting 
Grayned v. City of Rockford
, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972). When the statute is examined in the light of the facts of the case and the statute clearly applies to the party’s conduct, then a challenge to the statue’s constitutionality based upon vagueness will be unsuccessful. 
People v. Ryan
, 117 Ill. 2d 28, 33-34 (1987).

In the matter at bar, defendant asserts that the Act is unconstitutionally vague, as it affords her no advance notice of the type of acts which constitute “professional nursing.” We disagree. The provisions of the Act that describe the practice of professional nursing and advanced practice nursing are sufficiently explicit to inform those subject to the Act of the conduct to which it applies. The legislature has provided clear definitions of the conduct it considers to be the practice of nursing, which includes: assessing a health-care need and making a nursing evaluation; promoting, maintaining and restoring health; counseling, patient education and health education; and using medical, therapeutic and corrective measures to treat illness and improve health status. 225 ILCS 65/5–10(l), 15–5 (West 2000). We hold that the provisions of the statute are set forth in terms definite enough to afford an individual of ordinary intelligence with clear notice as to what conduct is prohibited absent a nursing license. We conclude that defendant has not met her burden of rebutting the presumption of constitutionality and establishing that the provisions of the Act are vague as applied to her. As stated, this court will construe a statute as constitutional where it can do so reasonably. 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 397 (1994). 

Defendant also asserts that our decision in 
People v. Jihan
, 127 Ill. 2d 379 (1989), is controlling in this case. We disagree. Our decision in 
Jihan
 is factually distinguishable from the matter at bar. At issue in 
Jihan
 was a provision of the now-repealed Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4401 
et seq
.), which prohibited any person from the “practice *** [of] midwifery” without a state license to do so (Ill. Rev. Stat. 1985, ch. 111, par. 4403). The defendant in 
Jihan
 was convicted of practicing midwifery without a license and sentenced to one year of probation. The defendant appealed her conviction, asserting that the statute under which she was convicted was unconstitutionally vague as applied to her because the term “midwifery” was not defined. We held that the term “midwifery,” as applied to the defendant, was ambiguous because it was not clear whether the term had “the broad meaning of 
assisting
 at childbirth” or “the more narrow meaning of actually 
delivering
 the child at birth.” (Emphases in original.) 
Jihan
, 127 Ill. 2d at 388. This court held that evidence had been presented that the defendant assisted at the birth, but that there was no showing that the defendant delivered the child. Accordingly, this court concluded that the Act was unconstitutionally vague as it applied to the defendant in that it did not provide sufficient notice that her conduct in that case was prohibited. 
Jihan
, 127 Ill. 2d at 389.

Unlike in 
Jihan
, where the term “midwifery” was not defined in the statute, the Nursing and Advanced Practice Nursing Act clearly and extensively defines “professional nursing” and “advanced practice nursing.” The constitutional infirmity in 
Jihan
 stemmed from the fact that there was a broad range of activity that could be encompassed by the term “midwifery,” and it was unclear whether the legislature intended to proscribe the assistance at a delivery or whether the proscription was limited to the actual performance of the delivery. In contrast, viewing the terms “professional nursing” and “advanced practice nursing” in the context of the instant case, there are no ambiguities in those terms as they are defined by the Act, and as was found by the 
Jihan
 court in the term “midwifery.” In addition, we observe that the defendant in 
Jihan
 was the subject of criminal proceedings, whereas in the matter at bar civil proceedings are at issue. As we stated in 
Jihan
, “there is a greater tolerance for statutory ambiguity in civil proceedings than in criminal proceedings ‘because the consequences of imprecision are qualitatively less severe.’ ” 
Jihan
, 127 Ill. 2d at 387, quoting 
Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.
, 455 U.S. 489, 498-99, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362, 371-72 (1982).

We also reject defendant’s contention that the appellate court violated the doctrine of the separation of powers (Ill. Const. 1970, art. II, §1) when, in defendant’s words, the court “extended [the Act’s] jurisdiction to include traditional (non-nurse) midwives.” The Illinois Constitution provides that the legislative, executive and judicial branches are separate, and that “[n]o branch shall exercise powers properly belonging to another.” Ill. Const. 1970, art. II, §1. In “ ‘both theory and practice, the purpose of the [separation of powers] provision is to ensure that the whole power of two or more branches of government shall not reside in the same hands.’ ” 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 410 (1997), quoting 
People v. Walker
, 119 Ill. 2d 465, 473 (1988). It is the function of the judicial branch of government to determine what the law is and to apply statutes to cases. 
Stern
, 179 Ill. 2d at 168. Where, as in the case of the appellate court below, a court merely construes a statute and applies that statute to a specific set of facts, there is no violation of the separation of powers doctrine. See 
Stern
, 179 Ill. 2d at 168. We therefore conclude that defendant’s separation of powers argument is without merit.

In her submission to this court, defendant also urges us to examine case decisions rendered outside of this jurisdiction for assistance in making our ruling today. Defendant places particular emphasis upon the decisions of the Supreme Court of Kansas in 
State Board of Nursing v. Ruebke
, 259 Kan. 599, 913 P.2d 142 (1996), and the Supreme Judicial Court of Massachusetts in 
Leigh v. Board of Registration in Nursing
, 395 Mass. 670, 481 N.E.2d 1347 (1985). We have reviewed these opinions and conclude that they are factually inapposite to the matter at bar.

In 
Ruebke
, the court affirmed the trial court’s order denying a request by the Kansas State Board of Nursing for a preliminary injunction against the defendant, a lay midwife, from engaging in “healing arts” without a license. The 
Ruebke
 court determined that the definitional provisions of the regulatory statute at issue did not cover midwifery. The court held that, in their ordinary usage, the terms used to define “healing arts” within the statute “focus exclusively on pathologies (
i.e.
, diseases) and abnormal human conditions (
i.e.
, ailments, deformities or injuries),” and determined that “[p]regnancy and childbirth are neither pathologies nor abnormalities ***.” 
Ruebke
, 259 Kan. at 615, 913 P.2d at 143. Unlike the narrow definition of “healing arts” contained within the Kansas statute, our Act defines “professional nursing” and “advanced practice nursing” in a broader manner. Based upon the differences in the relevant statutes, we find the 
Ruebke
 case inapposite.

In 
Leigh
, a registered nurse had been suspended on the grounds that she had practiced midwifery without the authorization of the Massachusetts Board of Registration of Nursing in violation of a statute requiring her certification as a nurse midwife. The Supreme Judicial Court of Massachusetts held that, by being a registered nurse and practicing as a midwife without board authorization to practice as a nurse in the expanded role of nurse midwife, Leigh violated the statute. 
Leigh
, 395 Mass. at 677, 481 N.E.2d at 1347. In 
dicta
,
(footnote: 2) the court went on to clarify that Leigh’s position as a 
nurse
 practicing midwifery without certification constituted the statutory violation, and that it was not Leigh’s practice of midwifery alone which violated the statute. The court, construing Massachusetts statutes which proscribe the unauthorized practice of medicine, concluded that simply assisting in normal cases of childbirth did not violate these statutes. 
Leigh
, 395 Mass. at 680-81, 481 N.E.2d at 1353. We find that the decision in 
Leigh
 is factually distinguishable from the matter at bar and, accordingly, is inapposite.

In her written submission to this court, defendant also makes a brief, one-paragraph argument that by construing the Act to apply to her conduct during the Verzi birth, she is being denied her “liberty and property interest in her employment as a traditional midwife.” We reject defendant’s assertion. It is well settled that “every citizen has the right to pursue a trade, occupation, business or profession” and that “[t]his inalienable right constitutes both a property and liberty interest entitled to the protection of the law as guaranteed by the due process clauses of the Illinois and Federal constitutions.” 
Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton
, 105 Ill. 2d 389, 397 (1985). However, this constitutional right is not absolute; it is “limited by the right of the State to regulate such freedom of action, through the proper exercise of the police power, where the public health, safety or welfare so requires.” 
Coldwell Banker
, 105 Ill. 2d at 397. As stated, the regulation of nursing practice contained within the Act is designed to protect the health and safety of the public. Therefore, defendant’s claim that the application of the Act to her conduct during the Verzi birth violates her liberty interest in her employment as a lay midwife lacks merit.

In sum, the General Assembly’s intent to ensure the health, safety and welfare of the public by regulating the practice of nursing would be frustrated if the statute did not apply to the conduct of defendant at bar during the birth of Spencer Verzi. The public policy concerns which underpin the Act weigh in favor of regulating the conduct here as the delivery of a child affects both the mother’s and child’s well-being. The state has a substantial interest in promoting the general welfare, and whether a course chosen by the legislature to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. 
Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d 322, 333 (1989). Although we understand plaintiff’s concerns with respect to the continued existence of lay midwifery in Illinois, we are constrained to apply the law as enacted by the General Assembly. “ ‘Under the doctrine of the separation of powers, courts may not legislate, rewrite or extend legislation. If the statute as enacted seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court.’ ” 
Michigan Avenue National Bank
, 191 Ill. 2d at 522, quoting 
People v. Garner
, 147 Ill. 2d 467, 475-76 (1992).

For the reasons stated above, we hold that plaintiff presented a 
prima facie
 case that defendant engaged in conduct which violated the Act. Accordingly, the circuit court erred in granting defendant’s motion for a directed finding at the close of plaintiff’s case.

CONCLUSION

For the reasons stated, the judgment of the appellate court is affirmed.

Affirmed
.

FOOTNOTES
1:     
1
On May 12, 2000, defendant filed a two-count complaint for administrative review and declaratory judgment against the Department and the Director seeking review of the April 7, 2000, cease and desist order. On May 11, 2001, the circuit court vacated the April 7, 2001, cease and desist order. The Department did not appeal from this ruling. The propriety of the issuance of the cease and desist order is not before this court, and we express no opinion on this matter. 

2:     
2
The court noted that “[w]hile the question whether the practice of midwifery constitutes the unauthorized practice of medicine is not before us, we think it appropriate to comment briefly on the question, in light of the position of the parties.” 
Leigh
, 395 Mass. at 678, 481 N.E.2d at 1352-53.