*In re* MARRIAGE OF NORMA PEREZ BATES, n/k/a Norma I. Perez, Petitioner-Appellant and Cross-Appellee, and R. EDWARD BATES, Respondent-Appellee and Cross-Appellant.

Second District   Nos. 2—02—0488, 2—02—0516, 2—02—0597 cons.

Opinion filed July 9, 2003.—Rehearing denied August 26, 2003.

Glen Kaufman and Paul L. Feinstein, both of Kaufman, Litwin & Feinstein, of Chicago, and David S. Mann, of Arlington Heights, for appellant.

Joel D. Arnold and Sharon R. Knobbe, both of Fortunato, Farrell, Davenport & Arnold, Ltd., of Westmont, Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellee.

John R. Bush, of Hunt, Kaiser, Bush, Aranda & Subach, Ltd., of Bensenville, guardian *ad litem*.

JUSTICE KAPALA delivered the opinion of the court:

Petitioner, Norma Bates, n/k/a Norma Perez, filed an appeal (No. 2—02—0488) from the order of the circuit court of Du Page County granting the request of respondent, Edward Bates, for a change of custody and awarding custody of the minor child to respondent. Petitioner also filed a separate appeal (No. 2—02—0516) from that same order. The same order denied respondent's petition to terminate unallocated family support and he filed his own appeal (No. 2—02—0597). This court consolidated the three appeals, and petitioner proceeded as the appellant/cross-appellee and respondent proceeded as the appellee/cross-appellant. For the following reasons, we affirm the order of the circuit court granting respondent's request for a change of custody and affirm the order denying respondent's request for termination of unallocated support.

## MOTIONS IN THE APPELLATE COURT

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## BACKGROUND

As the parties are familiar with the facts, we will set forth only

those facts necessary to establish the background for the issues raised in this appeal. We will discuss additional facts where necessary in our analysis of the various issues.

The original judgment of dissolution of marriage was entered on July 14, 2000. The judgment included a joint custody agreement, which required petitioner and respondent to cooperate in raising their child. Also pursuant to the joint parenting agreement, the child was to reside primarily with petitioner and respondent was to have certain visitation.

The judgment further provided that respondent must pay unallocated family support to petitioner. Such payments would continue until one of several situations occurred. Of relevance to this appeal, one of those situations was the "cohabitation of [petitioner] on a resident, continuing, conjugal basis as found by a Court of competent jurisdiction upon proper notice, petition and hearing."

On May 15, 2001, respondent filed a petition to modify the judgment of dissolution to award him sole custody of the child. On July 3, 2001, he also filed a petition seeking to terminate unallocated family support based on allegations that petitioner was cohabiting on a continuing and conjugal basis.

On March 9, 2001, petitioner petitioned for modification of the visitation schedule and also sought appointment of a guardian *ad litem* under section 506(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/506(a) (West 2000)). On March 19, 2001, the trial court appointed attorney John Bush as the child's representative under section 506. The trial court also set a trial date of December 19, 2001.

On the scheduled trial date, petitioner filed several motions, including a motion to dismiss respondent's petition to modify custody pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), a motion to bar the testimony of Dr. Richard Gardner, a motion to order the child representative to testify or, alternatively, to strike his written recommendation and to declare section 506 of the Act unconstitutional, and a motion under section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2000)) to dismiss the petition to modify custody. Respondent moved to strike these motions as having been filed in violation of the time requirements under the local rules.

The trial court denied petitioner's request to order the child representative to testify or, alternatively, to declare section 506 unconstitutional. It ruled in that regard that the child representative's report be "redacted and removed" from the court file. The trial court also struck petitioner's motion to bar Dr. Gardner's testimony based

on a lack of timely notice but decided to consider it as a motion *in limine* to be decided at the appropriate time during trial. The court also ordered a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), to determine the admissibility of evidence regarding parental alienation syndrome (PAS) and set the hearing for January 15, 2002. The court also struck the section 2—619 motion as untimely but deemed it a motion *in limine* to be renewed at the appropriate time during trial. The court denied petitioner's section 2—615 motion. The trial date was also continued.

At a hearing on January 7, 2002, the trial court granted respondent's motion to bar Dr. Jeffrey Johnson from testifying because his expert report had not been disclosed in a timely manner. The trial court also denied petitioner's motion to bar Dr. Robert Shapiro from testifying.

On that same date, the trial court denied petitioner's motion to bar respondent from testifying because of his alleged failure to answer certain deposition questions pertaining to physical and emotional health issues. The trial court explained that although respondent's deposition had occurred on September 26, 2001, petitioner waited until January 3, 2002, to file her motion and never filed a motion to compel answers during the intervening three months.

Following the *Frye* hearing, the trial court ruled that PAS had gained general acceptance in the field of psychology and that Dr. Gardner and other experts would be able to testify regarding PAS in this case. The trial court noted, however, that the issue of its admissibility based on the factual basis would be decided at trial.

On February 26, 2002, the trial court began hearing testimony on the issues of respondent's petition to modify custody and terminate support. On April 17, 2002, the trial court pronounced its oral ruling in the case. In doing so, the trial court explained that it considered the child representative's report along with the exhibits, the expert testimony, the testimony of respondent and petitioner, the nonparty testimony, and the arguments of counsel. In regard to respondent's request to terminate support, the court stated it had "strong suspicions as to what may actually be occurring here." Nonetheless, the trial court ruled that respondent had not shown a "de facto marriage" between petitioner and another and denied the petition to terminate support.

As for the petition to modify custody, the trial court found that the child's "present environment seriously endangers her physical, mental, moral, and emotional health," and that respondent "demonstrated by clear and convincing evidence upon the basis of facts that have arisen since the judgment of dissolution of marriage that a change in

circumstances has occurred and the circumstances of the child and the parties, and that a modification of the judgment is necessary to serve [the child's] best interests."

The trial court further elaborated that petitioner "engaged in a systematic effort to undermine the integrity of the relationship between [respondent] and [the child]." This effort included, according to the court, "denial of visitation, denial of regular contact, withholding of information, at least tacitly approving physical intimidation of [respondent], filing or causing to be filed pleadings which at best are incorrect, and at worse are just outright lies." The court stated, "I construe those pleadings to be part of the conspiracy to undermine the relationship." The trial court further found that the parties no longer are able to cooperate sufficiently to effectuate the joint parenting agreement and that no remedial course of action is available that would allow the present custodial situation to continue in the child's best interests.

The trial court also stated that it construed the factors under section 602(a) of the Act and that number 8, the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the parents and the child, was applicable. In that regard, the trial court explained that it would "throw out the words 'parental alienation syndrome' " and follow the language of section 602(a)(8).

The trial court further explained that its conclusions were "greatly impacted" by petitioner's testimony, which it found to be "largely invented, untruthful, manipulative, self-serving, and almost wholly [sic] absent of any recognition or responsibility for [her] actions and the damage that [her] actions have done to [the] child, and that child's relationship with another and equal parent." The trial court also found that to be true "of many of the witnesses that were provided on [her] behalf, including Mr. Malik, and frankly, [her] mother." The trial court accordingly terminated the joint custodial arrangement and awarded the sole care and custody of the child to respondent.

The trial court also expressly reserved the issue of visitation pending a recommendation by Dr. Roger Paul Hatcher and the child's representative. The trial court further explained that the lack of immediate visitation was predicated upon section 607 of the Act and that visitation would "seriously endanger the child's health" during the change of custody.

The trial court also commented concerning the issue of respondent's consumption of alcohol. The trial court stated it was not convinced that respondent testified completely truthfully regarding his use of alcohol. While the trial court did not consider respondent to

be an alcoholic, it did think respondent had a willingness to fabricate some of his testimony regarding his use. As a result, the trial court ordered that respondent is not to consume any alcohol until further order of the court.

Lastly, petitioner's attorney asked the court about the outstanding pleadings that remained undisposed. The trial court dismissed the rule to show cause against petitioner. As for the motion for judgment and the requests for personal property and reimbursement of medical and dental expenses, petitioner asked to have those set for status. Also, pursuant to petitioner's request, the trial court agreed to include language in the order pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)).

The trial court also entered a written order, which is dated April 17, 2002, and file stamped April 18, 2002. The written order provides that it incorporates the oral findings of fact. It further denies respondent's request to modify the judgment of dissolution as to unallocated support. The written order also discharges the rule to show cause against petitioner. It also states that respondent proved by clear and convincing evidence that the child's present environment seriously endangers her physical, medical, moral, or emotional health, and that a substantial change of circumstances has been proved by clear and convincing evidence, and that it is in the child's best interests that respondent have sole custody. The order further provides that under section 607 of the Act visitation by petitioner would seriously endanger the child and that visitation is abated and reserved until further order of the court. The order also states that respondent shall not consume alcohol. The order continues until May 17, 2002, "all remaining issues and pleadings."

## DISCUSSION

### A. Petitioner's Appeal

We will first address the issues raised by petitioner concerning the trial court's termination of the joint parenting arrangement and award of sole custody to respondent.

### 1. *Constitutionality of section 506*

The child representative's report and recommendation, which were submitted on the day trial was to begin, provide that the child representative reviewed certain pleadings, certain doctors' reports, the child's school and medical records, and other documents, photographs, and reports. According to the report, the child representative also made personal observations during meetings and interviews with petitioner, respondent, and the child, as well as when he attended visitation between the child and respondent. The report contains

several factual assertions based on these personal observations of the child representative which provide part of the underlying basis for the recommendations in the report.

At trial, petitioner filed a motion seeking to have the trial court order the child representative to testify or, alternatively, have section 506 declared unconstitutional. The trial court denied the motion in its entirety. On appeal, petitioner contends that section 506 of the Act denies her procedural due process because it allows the child's representative to submit a recommendation without testifying, which denies her the right to cross-examination concerning the underlying factual basis for his recommendation. For the reasons set forth below, we reject her constitutional challenge.

■ The constitutionality of a statute is a question of law subject to *de novo* review. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). Statutes are presumed to be constitutional, and the party challenging the validity of the statute has the burden to clearly establish the constitutional invalidity. *Cryns*, 203 Ill. 2d at 279-80. A court must construe a statute so as to affirm its constitutionality, if the statute is reasonably capable of such a construction. *Cryns*, 203 Ill. 2d at 279-80. If a statute's construction is doubtful, a court will resolve the doubt in favor of its validity. *Cryns*, 203 Ill. 2d at 279-80.

■ While there are no cases addressing this issue, we resolve it under a plain reading of section 506 itself. Section 506(a) provides, in relevant part, that a child representative may be appointed "subject to the terms or specifications the court determines." 750 ILCS 5/506(a) (West 2000). We read section 506 to give rise to three possible situations in which the child representative might act as an advocate for the child.

First, he might advocate his recommendation based upon evidence at the trial. If the child representative makes recommendations based only upon the evidence presented in court, he is doing no more than an attorney representing the child would do. In this situation, prohibiting the child representative from being called as a witness is no more a denial of due process than prohibiting one party from calling the other party's attorney to testify regarding the attorney's in-court observations of the evidence at trial. To our knowledge no court has found a denial of due process under such circumstances and neither do we.

Second, he might advocate based upon information provided by investigators or witnesses. While it is true that the child representative has the power to base his recommendation on information provided by third-party investigators or witnesses without being called as a witness, that does not leave a party with no recourse in attacking

either the recommendation or the underlying factual matters. Under the express terms of section 506(a), a party can request the court to condition any recommendation of the child representative on revealing any factual sources underlying that recommendation, such as witnesses or third-party investigators, so that those individuals may be examined by the opposing party.

Finally, the child representative might advocate based upon his own observations as a direct witness. In the event the child representative directly witnesses relevant facts and circumstances that are used to support the recommendation, then the child representative has stepped out of his attorney role and has become a witness who may be called and questioned at trial as any other witness under the terms or specifications as determined by the court. We do not read the prohibition against being called as a witness to be inconsistent with such an approach. We believe section 506(a) contemplates such a hybrid role for a child representative. Having interpreted section 506(a) to allow a party to request disclosure by the child representative of underlying factual matters or to cross-examine the child representative in those instances where he acts as a witness, we hold section 506(a) does not deny a party procedural due process and is not unconstitutional as contended.

This interpretation may also be reconciled with Rule of Professional Conduct 3.7 (134 Ill. 2d R. 3.7), which prohibits an attorney, except under certain circumstances not applicable here, from being both a witness on behalf of his client and an advocate. Under section 506(a)(3) the court may appoint an additional attorney to represent the child. In the event a child representative was called to testify as a witness in the narrow circumstances described above, an attorney could be appointed to represent the child on that limited basis, thus avoiding any conflict with Rule 3.7.

█ In the present case, petitioner did seek to have the child representative testify so she could subject him to cross-examination. The trial court denied this request. Under our interpretation of section 506, it was error to do so to the extent the child representative's recommendation was based on his own observations as a witness. Such error was harmless, however, as the recommendation did not play a significant role in the trial court's ruling and, therefore, did not affect the outcome of the trial. See *Argianas v. Chestler*, 259 Ill. App. 3d 926, 947 (1994). When it decided it was going to consider the report, the trial court expressly noted that it was going to consider the report "for what it's worth" and that "[i]f it looks like it's things I should consider, I will[,] [a]nd if it looks like it's way out on a limb, I'm not going to." Additionally, when it made its oral ruling, the trial court

commented that it considered the child representative's report along with the exhibits, the expert testimony, the testimony of respondent and petitioner, the nonparty testimony, and the arguments of counsel, which included that of the child representative. Under these circumstances, we cannot say any error in considering the report was prejudicial and, thus, reversible error.

### 2. *Section 2—615 motion*

The material in this section and the remaining sections 3 through 8 is nonpublishable under Supreme Court Rule 23.

### B. Respondent's Cross-Appeal

The material in this section is nonpublishable under Supreme Court Rule 23.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part petitioner's motion to strike portions of respondent's cross reply brief, deny respondent's motion to dismiss the appeal for lack of jurisdiction, affirm the judgment of the circuit court of Du Page County awarding custody to respondent, and affirm the judgment declining to terminate unallocated support.

Affirmed.

McLAREN and GROMETER, JJ., concur.