**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220247-U

Order filed May 9, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF THOMAS L. VALUS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | Appeal No. 3-22-0247 Circuit Nos. 16-D-81 and 16-OP-81 |
| | ) | |
| ELENA VALUS, n/k/a Elena Lyons, | ) ) | The Honorable Louis B. Aranda, |
| Respondent-Appellant. | ) ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a postdissolution of marriage case, the appellate court found that the trial court did not err in: (1) granting the petitioner's petition to modify the trial court's allocation judgment to provide that the parties' minor children were to receive school-required vaccinations; (2) denying the respondent's motion for a directed finding during the evidentiary hearing on the petitioner's petition to modify at the conclusion of the petitioner's case-in-chief; and (3) denying the rehearing request portion of the respondent's motion to reconsider, which claimed that the trial court had improperly allowed certain testimony to be admitted into evidence at the evidentiary hearing on petitioner's petition to modify. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2         Petitioner, Thomas L. Valus, filed a petition to modify the trial court's allocation judgment to provide that the parties' minor children were to receive school-required vaccinations. Respondent, Elena Valus, n/k/a Elena Lyons, Thomas's ex-wife, opposed the petition. After an evidentiary hearing, the trial court granted Thomas's petition to modify. Elena filed a motion to reconsider, which the trial court subsequently denied. Elena appeals, arguing that the trial court erred in: (1) granting Thomas's petition to modify the trial court's allocation judgment to provide that the parties' minor children were to receive school-required vaccinations; (2) denying Elena's motion for a directed finding during the evidentiary hearing on Thomas's petition to modify at the conclusion of Thomas's case-in-chief; and (3) denying the rehearing request portion of Elena's motion to reconsider, which claimed that the trial court had improperly allowed certain testimony to be admitted into evidence at the evidentiary hearing on Thomas's petition to modify. We affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4         Elena and Thomas were married in January 2010 and had two children—V.V., born in August 2010, and T.V., born in August 2014. In January 2016, Thomas filed a petition for dissolution of marriage.

¶ 5         In December 2017, the parties entered into a parenting agreement, which the trial court approved and which became the trial court's allocation judgment. Of relevance to this appeal, the allocation judgment provided that: (1) the children would be raised in the Christian faith; (2) it was in the children's best interests for the parties to be jointly involved in the significant decision-making for the children; (3) to that end, the parties were required to consult with one another on all significant issues, including education, health, and religious issues, prior to a decision being made; (4) in the current best interests of the children, Thomas's residence would

2

be designated as the children's residential address for school enrollment purposes and the children would be enrolled in Willow Creek Elementary School; (5) Thomas would be designated as the custodial parent for purposes of the School Code (105 ILCS 5/1-1 *et seq.* (West 2016)); and (6) all prior understandings and agreements between the parties were superseded by the allocation judgment. Several months later, in April 2018, a judgment of dissolution of the parties' marriage was entered.

¶ 6        In July 2021, Thomas filed a *pro se* motion, which the trial court characterized, in part, as a petition to modify the allocation judgment. In the petition, Thomas stated, among other things, that he wanted his minor children to receive school-required vaccinations.

¶ 7        In September 2021, Elena filed a petition to modify as well and sought to reduce or restrict Thomas's parenting time for various reasons relating to Thomas's and his new wife's treatment of the children. The parties were sent to mediation but were unable to resolve either of the two petitions.

¶ 8        In November 2021, the trial court appointed a guardian *ad litem* (GAL) to investigate the pending matters and to file a written report with the court.

¶ 9        In February 2022, the case was called for a hearing on the two petitions to modify that had been filed. Prior to a hearing taking place, the parties participated in a pretrial conference with the trial court and were able to resolve most of the issues that had been raised in the two petitions, except for the vaccination issue. An evidentiary hearing was held on that issue with Thomas representing himself and Elena being represented by an attorney. The evidence presented at the hearing can be summarized as follows.

¶ 10        In his case-in-chief, Thomas called three witnesses to testify: himself, the GAL, and Elena. Thomas testified that his daughter, V.V., who was currently in sixth grade, had gotten all

of her school-required vaccinations up until the present year. V.V. received her initial vaccines at the hospital when she was born and had been taken by Elena to get some of the other required vaccinations thereafter. Although Thomas was inconsistent, at times, in his testimony about when V.V. had been vaccinated, he stated that to the best of his memory, the last time that he had taken V.V. to receive vaccines was about two years ago, in 2020, when V.V. was in fourth grade, and he had taken her to get her booster shots.

¶ 11    Thomas's son, T.V., however, who was currently seven years old, had not received any vaccinations, other than the two that he had received when he was born. When T.V. started kindergarten, an issue arose about T.V.'s lack of vaccinations. Prior to that time, Thomas and Elena had not discussed vaccines and Thomas had assumed that Elena was getting T.V. the required vaccinations. When the issue arose with T.V.'s school, Elena decided that she was going to try to get a religious exemption. According to Thomas, Elena had sent him an email (or emails) about vaccines and did not say anything in that email about religion or the Bible. Rather, Elena stated in her email that she did not believe in putting chemicals into one's body, that doing so was illogical to her, and that vaccines were dangerous to everyone's health.

¶ 12    During his testimony, Thomas denied that the reason for T.V.'s lack of vaccines was because he and Elena had agreed not to get any more vaccines for the children. Although Thomas had referred to V.V.'s vaccination form and to Elena's email, he did not seek to admit either of those documents into evidence during the hearing.

¶ 13    The GAL, Sean McCumber, testified that he had a certificate in youth ministry from Northern Baptist Seminary in Lombard, Illinois, and had previously served as a youth pastor at St. Matthew United Church of Christ in Wheaton, Illinois. McCumber had interviewed Elena a few times during his entire involvement in the case and had one conversation and a few emails

4

with Elena regarding Thomas's current petition to modify. According to McCumber, Elena's issue with the vaccines was that "Leviticus, a chapter in the Old Testament, advise[d] against putting [impure things] into [one's] body, specifically the blood of another, and that was in reference to the fact that some vaccinations may or may not have come from stem cells from an aborted fetus from 1972." Relative to Elena's claim, McCumber had read the Bible, medical articles from the journals of the American Medical Association (AMA) and the American Pediatric Association, and articles from countervailing viewpoints on vaccines. In McCumber's opinion, the articles he had read from the AMA did not support a non-vaccination position. McCumber acknowledged, however, that he had no schooling in medicine, other than his college coursework in biochemistry and microbiology, and that he had never worked in the medical field.

¶ 14 Called as a witness by Thomas, Elena testified that she did not have any medical background or religious education, although she continued to take "[her] lessons in [her] church." Elena had read Leviticus and the entire Bible. She sometimes ate pork, even though it said in Leviticus not to do so, and saw no connection between eating pork and the vaccination issue.

¶ 15 After Thomas presented the testimony of his witnesses, he rested his case-in-chief. Elena moved for a directed finding, arguing that Thomas had failed to prove or argue that vaccinations were in the children's best interests. After taking a brief recess, the trial court denied Elena's motion for a directed finding, stating that it had reviewed its notes regarding the GAL's testimony and that it believed that, based upon that testimony, Thomas had established a *prima facie* case for the importance of school-related vaccinations.

¶ 16      Elena presented no additional evidence and proceeded, instead, to closing argument. In her argument, Elena asserted that the allocation judgment required the parties to agree on major decisions relating to the best interests of the minor children, including medical and vaccination decisions; that the parties had not agreed that the children should be vaccinated; and that Thomas had failed to show that it was in the children's best interests to change what the parties had agreed to in the allocation judgment.

¶ 17      After Elena's closing argument had concluded, the trial court called GAL McCumber to testify as the court's witness. Upon being questioned by the trial court, McCumber stated that he had discussed the vaccination issue globally with Elena. McCumber's understanding was that V.V. had her vaccinations current up until the sixth grade and that her last vaccination was two years ago when she was in the fourth grade. T.V., however, had not received all of the vaccinations that were required for school-age children during that same period of time. Elena had told McCumber that Thomas had gotten V.V.'s vaccinations a few years ago without Elena's permission. Elena did not express a specific objection to McCumber about those vaccinations. McCumber had read the medical journals from the AMA and the Pediatrics Association and believed the vaccinations were needed.

¶ 18      According to McCumber, the children had been seeing a pediatrician since they were born. McCumber, however, had not spoken to the children's pediatrician and did not know whether the children were still seeing the same pediatrician. The only reason that had been provided for T.V. not to receive vaccinations was Elena's religious objection. McCumber thought that Elena had been a Biblical faith follower for the past several years. McCumber believed that Elena's religious objection did not overcome the medical journals that McCumber had read and the importance of the vaccinations. McCumber was aware that Elena did not want

vaccinations for the children and that Elena made a religious objection to those vaccinations. McCumber suspected that Elena was upset that Thomas had gotten V.V. vaccinated, but Elena was not screaming and ranting about it.

¶ 19 At the conclusion of the hearing, the trial court found that it was in the best interests of the children to receive the school-required vaccinations and granted Thomas's petition to modify the allocation judgment to that effect. In so doing, the trial court commented that: (1) V.V. had been vaccinated dating back to a period before the entry of the allocation judgment and before the divorce; (2) T.V. had been vaccinated at birth but not since; (3) the children had been seeing a pediatrician who had overseen the vaccinations that they had received; (4) there was nothing in the allocation judgment that stated that there was a prohibition to vaccinations; (5) the parties had been unable to resolve the vaccination issue on their own or through mediation; and (6) the trial court was taking "strong note" of the GAL's testimony that vaccinations were in the children's best interests. The trial court ruled, therefore, that the children were to receive the school-required vaccinations presently. In making that ruling, the trial court stated that it "[was] not making a decision to modify the parental responsibilities nor to modify the allocation judgment parenting agreement, but [was] simply stating that the children shall presently receive the school required vaccinations that [were] presently required."

¶ 20 Elena filed a motion for clarification, reconsideration, and/or rehearing (referred to hereinafter as the motion to reconsider or the motion) of the trial court's ruling and raised several issues. A hearing was held on the motion to reconsider in May 2022. At the conclusion of the hearing, the trial court denied the motion, noting, among other things, that: (1) the parties had agreed in the allocation judgment that it was in the best interests of the children to attend Willow Creek Elementary School and that Thomas would be the children's custodial parent for the

7

purposes of the School Code; (2) Thomas had argued at the hearing on the petition to modify that T.V. needed to get the school-required vaccinations in order to attend Willow Creek; (3) the allocation judgment was devoid of any prohibition to vaccines; (4) the children had previously received all school-required vaccinations for their age and grade, starting with when they were born; (5) the GAL believed that it was in the children's best interests for the children to receive the present school-required vaccinations; (6) Elena's decision not to obtain or agree to any more vaccinations for the children was a substantial change in circumstances; (7) Elena had chosen not to testify at the hearing on Thomas's petition to modify and not to present any evidence as to why she had changed her position or why she now objected to the children receiving any additional vaccinations; (8) the importance of the GAL's testimony was that it confirmed independently that the children had been under the care of the same pediatrician since birth who had administered the vaccines to the children until the issue arose with T.V. needing to be vaccinated for kindergarten; and (9) the trial court did not need to rely on the GAL for any opinion as to the medical aspect of the vaccines because Elena had chosen not to raise any argument at the hearing on Thomas's petition to modify regarding any adverse effects of the vaccines. At Elena's request, the trial court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay an appeal in this case and also stayed its underlying ruling pending an appeal. This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22          On appeal, Elena argues that the trial court erred in: (1) granting Thomas's petition to modify the trial court's allocation judgment to provide that the parties' minor children were to receive school-required vaccinations; (2) denying Elena's motion for a directed finding during the evidentiary hearing on Thomas's petition to modify at the conclusion of Thomas's case-in-

8

chief; and (3) denying the rehearing request portion of Elena's motion to reconsider, which claimed that the trial court had improperly allowed certain testimony to be admitted into evidence at the evidentiary hearing on Thomas's petition to modify. We will address each of those arguments in turn. Although Thomas has not filed an appellee's brief in this case, we will, nevertheless, address the merits of this appeal, pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (indicating that in the absence of an appellee's brief, a reviewing court should decide an appeal on the merits if the record is simple and the claimed errors are such that the court may easily decide the issues raised by the appellant without the aid of an appellee's brief).

¶ 23                                A. Grant of Thomas's Petition to Modify

¶ 24        As noted above, as her first point of contention on appeal, Elena argues that the trial court erred in granting Thomas's petition to modify the allocation judgment to provide that the children were to receive the school-required vaccinations. In support of that argument, Elena makes two primary assertions. First, Elena claims that the trial court's order was a mandatory injunction and that it was erroneously entered because Thomas failed to satisfy the statutory and procedural requirements for such an injunction to issue. Elena reaches that conclusion, however, based largely upon a misinterpretation of the comments that the trial court made when it announced its ruling. By our view, when the trial court remarked that it was not making a decision to modify the parental responsibilities or the allocation judgment but was simply stating that the children were to presently receive the school-required vaccinations, the trial court was merely clarifying the extent of its ruling—that it was not changing the joint allocation of parental responsibility for significant decision-making or for health decisions as a whole but, rather, was only changing one narrow aspect of those categories of parental responsibility to require that the

9

children receive the mandatory school vaccinations. We disagree with Elena's contention that the trial court was expressly announcing that its ruling was not a modification of the allocation judgment, and we view the court's order as a modification, albeit a very narrow one. We, therefore, reject Elena's claim that the trial court's ruling was an injunctive order. In so doing, we note that Thomas's petition did not seek an injunction and that the parties did not argue this matter in the trial court as if an injunction had been sought. It comes as no surprise, therefore, that the record in this case does not show that Thomas satisfied the requirements for an injunction to be granted.

¶ 25    Second, and in the alternative, Elena claims that even if the trial court's ruling was an order modifying the allocation judgment, and not a mandatory injunction as Elena initially claims, this court should still reverse the trial court's ruling. She argues that Thomas failed to prove the two requirements necessary for a petition to modify to be granted—that there was a substantial change in circumstances and that modification was in the best interests of the children. According to Elena, the trial court reached the opposite conclusion because it erroneously considered facts that occurred prior to the allocation judgment, misapplied the law, and made a decision that was against the manifest weight of the evidence. For those reasons, Elena asks that we reverse the trial court's judgment.

¶ 26    Section 610.5 of the Marriage and Dissolution of Marriage Act (Act) sets forth the requirements for the modification of orders allocating parental decision-making responsibilities and parenting time. 750 ILCS 5/610.5 (West 2020); see also *id.* § 600 (defining "allocation judgment," "parenting plan," and "parental responsibilities"). More specifically, section 610.5(c) provides:

"Except [in circumstances not relevant to this appeal], the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." *Id.* § 610.5(c).

Thus, to prevail on a petition to modify parental responsibilities, a petitioner must prove the following two elements by a preponderance of the evidence: (1) that a substantial change in the circumstances of the parents or the child has occurred; and (2) that modification is in the best interest of the child. See *id.*; *In re Marriage of Burns & Lifferth*, 2019 IL App (2d) 180715, ¶ 27. If the petitioner fails in his or her burden to prove those elements, the trial court must deny the petition to modify. See *id.*

¶ 27     A trial court's ruling on whether to modify parental responsibilities will not be reversed on appeal unless it is against the manifest weight of the evidence. See *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004) (addressing child custody issues). A ruling is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the ruling itself is arbitrary, unreasonable, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). The appellate court gives great deference to a trial court's determination on parental responsibilities because the trial court is in a far better position than the appellate court to judge the credibility of the witnesses, to weigh the evidence, and to determine the best interest of the child. See *Bates*, 212 Ill. 2d at 515-16. Therefore, in determining whether a trial court's judgment is against the manifest weight of

the evidence, the appellate court will view the evidence in the light most favorable to the appellee and, when faced with multiple reasonable inferences, will accept those inferences that support the trial court's ruling. See *id.* at 516.

¶ 28     In the present case, after thoroughly reviewing the record before us, we find that the trial court's grant of Thomas's petition to modify was well supported by the evidence. The evidence presented at the hearing on the modification petition established that up through the time of the allocation judgment, the parties had a practice of getting their children vaccinated, at least as far as Thomas's knowledge was concerned. The allocation judgment provided that Thomas and Elena were to make jointly all significant decisions relating to the children, including health and religious decisions, but did not specifically address vaccinations. At some point after the allocation judgment was entered, however, Elena stopped getting the children vaccinated because she had developed certain religious objections or concerns with the vaccines. Elena did so without Thomas's knowledge, without discussing the matter with Thomas, and did so despite the requirement in the allocation judgment that significant decisions for the children were to be made jointly by Thomas and Elena. Thomas only learned of the lack of vaccines because a problem arose when T.V. had reached school age but did not have the required vaccinations to attend the school in question. The parties had previously agreed in the allocation judgment that it was in the best interests of the children to attend that particular school, and the GAL, who had investigated the matter, was of the opinion that obtaining the school-required vaccinations was in the children's best interests as well. By our view, the evidence presented at the hearing on the modification petition amply established both that a substantial change in circumstances had occurred and that a modification of the allocation judgment was in the best interests of the

children. We conclude, therefore, that the trial court's ruling was not against the manifest weight of the evidence. See *Best*, 223 Ill. 2d at 350.

¶ 29                    B. Denial of Elena's Motion for Directed Finding

¶ 30        As her second point of contention on appeal, Elena argues that the trial court erred in denying the motion for a directed finding that Elena made during the evidentiary hearing on the modification petition at the conclusion of Thomas's case-in-chief. Elena asserts that her motion should have been granted for either of the following two reasons: (1) because Thomas failed to establish a *prima facie* case for modification as a matter of law by failing to present at least some evidence on every essential element of a modification claim; or (2) because after a qualitative review of the evidence (not conducted in the light most favorable to Thomas), sufficient evidence did not remain to establish a *prima facie* case for modification.[1] Thus, for either of those two reasons, Elena asks that we reverse the trial court's denial of her motion for directed finding and, we presume, that we reverse the trial court's judgment.

¶ 31        In a bench trial, at the close of the plaintiff's case (the petitioner here), the defendant (the respondent here) may move for a directed finding or judgment in his or her favor. 735 ILCS 5/2-1110 (West 2020); *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275 (2003). In ruling upon such a motion, the trial court must conduct a two-prong analysis. *Cryns*, 203 Ill. 2d at 275. First, the trial court must determine whether the plaintiff has established a *prima facia* case as a matter of law. *Id.* To have done so, the plaintiff must have presented at least some evidence on every element essential to the plaintiff's underlying cause of action. *Id.* If the plaintiff has failed in his

---

[1] In her argument on this issue, Elena again claims that the trial court's order was an injunctive order. Because we have already rejected that argument in our analysis of the first issue, we will not address that argument further here.

burden to establish a *prima facie* case, the trial court should grant the motion and should enter a directed finding or judgment in the defendant's favor. *Id.*

¶ 32      If the trial court determines, however, that the plaintiff has established a *prima facie* case, the trial court then moves on to the second prong of the analysis. *Id.* Under the second prong, the trial court, as the finder of fact, must consider the totality of the evidence presented in the plaintiff's case-in-chief, including any evidence which is favorable to the defendant. *Id.* at 275-76. When conducting the second prong of the analysis, the trial court does not consider the evidence in the light most favorable to the plaintiff, as it would in a jury trial. See 735 ILCS 5/2-1110 (West 2020); *Cryns*, 203 Ill. 2d at 276. Instead, the trial court must weigh all of the evidence, determine the credibility of the witnesses, and draw reasonable inferences therefrom. 735 ILCS 5/2-1110 (West 2020); *Cryns*, 203 Ill. 2d at 276. That weighing process may result in some of plaintiff's evidence being negated. *Cryns*, 203 Ill. 2d at 276. After weighing the quality of all of the evidence, the trial court should determine, applying the standard of proof required for the underlying cause, whether sufficient evidence remains to establish the plaintiff's *prima facie* case. *Id.* If the trial court so finds, it should deny the defendant's motion and proceed with the trial. *Id.* If the trial court reaches the opposite conclusion, however, it should grant the defendant's motion and enter a directed finding or a judgment for defendant. *Id.*

¶ 33      The standard of review that applies on appeal differs depending on whether the appellate court is reviewing the trial court's decision as to the first prong of the analysis or the second prong. See *id.* at 275-76. A trial court's ruling under the first prong of the analysis, that the plaintiff has failed to establish a *prima facie* case, is a question of law that is subject to *de novo* review on appeal. *Id.* at 275. A trial court's ruling under the second prong of the analysis,

14

however, will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id.* at 276.

¶ 34    In the present case, after reviewing the evidence presented in Thomas's case-in-chief, we conclude that the trial court properly denied Elena's motion for a directed finding. As to the first prong of the analysis set forth above, contrary to Elena's assertion, the record before us shows that Thomas presented some evidence on each of the two essential elements of a modification claim. See *id.* Thomas's testimony at the hearing established that the children had been vaccinated, to the best of Thomas's knowledge, up through the time of the allocation judgment and that a problem arose thereafter because T.V. needed vaccinations to attend Willow Creek Elementary School, but Elena was opposing those vaccinations. The evidence also established that the parties had agreed in the allocation judgment that it was in the best interests of the parties' children to attend Willow Creek and to have Thomas be the custodial parent for the purposes of the School Code. In addition, the GAL who had investigated the matter and had reviewed the Bible and medical journals about vaccines felt that the AMA journals that he had reviewed did not support a non-vaccination position. The evidence presented, therefore, was sufficient to establish a *prima facie* case for modification as a matter of law. Thus, the trial court's implicit ruling on the first prong of the analysis was not erroneous. See *id.* at 275.

¶ 35    As to the second prong of the directed finding analysis, again, contrary to Elena's assertion, a qualitative analysis of the evidence presented in Thomas's case-in-chief does not negate any of the necessary elements of a modification claim. Although there were some minor problems with Thomas's testimony—inconsistencies and possibly reading from notes—we find that the evidence presented in Thomas's case-in-chief as a whole (Thomas's testimony, as corroborated by the portion of the GAL's testimony that was presented in Thomas's case-in-

15

chief) was sufficient to maintain a *prima facie* case for modification, even when that evidence is no longer viewed in the light most favorable to Thomas. See *id.* at 276. The trial court's ruling on the second prong of the analysis, therefore, was not against the manifest weight of the evidence. See *id.* Accordingly, we find that the trial court properly denied Elena's motion for a directed finding. See *id.*

¶ 36         C. Denial of Elena's Request for Rehearing (Motion to Reconsider)

¶ 37         As her third and final point of contention on appeal, Elena argues that the trial court erred in denying the request for rehearing portion of Elena's motion to reconsider. Elena asserts that her request should have been granted because in making its decision on the modification petition, the trial court erroneously relied on inadmissible testimony from the GAL that vaccination was in the children's best interests, which was based, in part, upon the GAL's review of medical journals that were not admitted into evidence. Elena acknowledges that she did not object when the GAL testified in that manner during the hearing but claims that the issue has not been forfeited on appeal because the real party in interest in this proceeding is the children (see *Harris v. Spencer*, 86 Ill. App. 2d 41, 46 (1967) (rejecting a claim in a custody modification proceeding that the defendant had waived any error in the admission of a probation officer's report, even though the defendant had stipulated that the trial court could consider that report, because the real party in interest was the minor children and not the defendant)). Therefore, based upon the merits of her argument on this issue, Elena asks that we reverse the trial court's ruling on the rehearing request portion of her motion to reconsider and that we remand this case for rehearing on Thomas's petition to modify the allocation judgment.

¶ 38         A trial court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). The threshold for

16

finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Leona W.*, 228 Ill. 2d at 460. However, even if the trial court commits an abuse of discretion in the admission of evidence, a new trial should not be ordered unless the trial court's erroneous ruling appears to have affected the outcome of the trial. See *Leona W.*, 228 Ill. 2d at 460.

¶ 39        Under section 506(a)(2) of the Act, in any proceeding involving the allocation of parental responsibilities, the trial court may appoint a GAL to address the issues that the court delineates. 750 ILCS 5/506(a)(2) (West 2020). Pursuant to that appointment, the GAL shall investigate the facts of the case and interview the child and the parties. See *id.* The statute also requires that the GAL testify or submit a written report to the trial court regarding his or her recommendations in accordance with the best interests of the minor child involved. *Id.* In addition, the GAL may be called as a witness for the purposes of cross-examination regarding his or her report or recommendations. *Id.*

¶ 40        In the present case, after reviewing the record, we find that the GAL's testimony was properly admitted. Contrary to Elena's assertion, we are not required to ignore Elena's forfeiture of this issue. See *In re Marriage of Saheb & Khazal*, 377 Ill. App. 3d 615, 627 (2007) (noting that the father of the child had waived his arguments on appeal that the trial court had erred when it failed to obtain testimony or a written report from the court-appointed GAL as to the visitation issue before the court because the father had failed to object to those alleged errors). To the extent that the case law cited by Elena supports a different conclusion (see *Harris*, 86 Ill. App. 2d at 46), we respectfully disagree.

17

¶ 41    However, even if we were to ignore Elena's forfeiture of this issue, we would still have to find that the GAL's testimony regarding the best interests of the children was properly admitted. The Act specifically allows the GAL to provide testimony or a report regarding his or her recommendations in accordance with the best interests of the minor children involved. 750 ILCS 5/506(a)(2) (West 2020). That is exactly what was done in the present case. The fact that the medical journals that the GAL reviewed on the vaccination issue were not admitted into evidence went to the weight to be given to the GAL's testimony and not to its admissibility. See *People ex rel Irby v. Dubois*, 41 Ill. App. 3d 609, 616 (1976) (indicating that any weaknesses in social investigator's custody report went to the weight to be given to the report). Nor does it appear from the record that Elena was prejudiced by the trial court's implicit ruling. Although the trial court stated initially that it had taken "strong note" of the GAL's testimony, it later clarified that comment at the hearing on Elena's motion to reconsider, stating that it did not need to give any weight to the medical aspects of the GAL's testimony because Elena had chosen not to raise any argument at the hearing on Thomas's petition to modify regarding any adverse effects of the vaccines. We, therefore, find no error in the trial court's admission of the GAL's testimony.

¶ 42                                   III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 44    Affirmed.